C. B. RICHARDS & Co. *v.* UNITED STATES (No. 3808)[1]

---

[1] T. D. 47376.

United States Court of Customs and Patent Appeals, November 5, 1934

Walden & Webster (Walter F. Welch and Edward F. Jordan of counsel) for appellant.

Joseph R. Jackson, Assistant Attorney General (William Whynman and Ralph Folks, special attorneys, of counsel), for the United States.

[Oral argument October 11, 1934, by Mr. Jordan and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court overruling the protest of the importer against the classification of certain "bronze groups or statues," they having been classified under paragraph 1449 of the Tariff Act of 1922 as "Works of art, * * * not specially provided for," duty being collected at the rate of 20 per centum ad valorem.

The claim relied upon by the importer is that they are admissible free of duty under paragraph 1708 of said act, the full text of which reads:

PAR. 1708. Works of art (except rugs and carpets), collections in illustration of the progress of the arts, works in bronze, marble, terra cotta, parian, pottery, or porcelain, artistic antiquities, and objects of art of ornamental character or educational value which shall have been produced more than one hundred years prior to the date of importation, but the free importation of such objects shall be subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe.

The nature of the merchandise is stated in a stipulation of counsel, the material portion of which reads:

It is hereby stipulated and agreed between counsel that the merchandise assessed for duty at 20% ad valorem under paragraph 1449 Tariff Act of 1922, consists of works of art, not originals nor first or second replicas, that said works of art are works in bronze * * *.

In the report of the collector, transmitting the protest and papers to the trial court, it is said, inter alia:

The documentary evidence showing that the bronzes are the production of a professional sculptor or that they are artistic antiquities over 100 years old as required by arts. 394 or 395, C. R. of 1915 and section 63, T. D. 36330, and paragraphs 1704 or 1708 not having been furnished, duty was assessed at 20% under paragraph 1449, act of 1922.

Note, attached to the invoice, a shipper's certificate showing that the bronzes are the product of living artists.

It is not claimed that appellant complied with the regulations referred to, the contention on its behalf being that under a proper

354

construction of paragraph 1708, *supra*, the "one hundred years" provision is limited to "objects of art of ornamental character or educational value" and that the regulations as to proof of antiquity which the Secretary of the Treasury is authorized to promulgate legally may relate only to them. In other words, appellant contends that it is not the purpose of the paragraph to require that any of the articles therein provided for, except "objects of art of ornamental character or educational value" shall have been produced more than one hundred years prior to the date of importation, and that the free importation of only these are subject to regulations as to proof of antiquity.

The decision of the trial court rests solely upon the familiar doctrine of legislative adoption of judicial interpretation and the contention on behalf of the Government before us, following that court's theory exclusively, insists that "The issue * * * is *stare decisis* under the decisions of this court."

It appears that paragraph 717 of the 1909 tariff act and paragraph 656 of the 1913 tariff act are, insofar as here material, the same in phraseology as paragraph 1708 of the Tariff Act of 1922, *supra*, and that, in different decisions of this court, arising under the former two acts, merchandise other than "objects of art of ornamental character or educational value" was treated as being subject to the regulations "as to proof of antiquity," and hence as being subject to the requirement that it "shall have been produced more than one hundred years prior to the date of importation."

The leading cases cited as arising under the prior acts are *Gump Co.* v. *United States*, 3 Ct. Cust. Appls. 137, T. D. 32384; *United States* v. *Thomas*, 3 Ct. Cust. Appls. 142, T. D. 32385; *Kronfeld, Saunders & Co.* v. *United States*, 4 Ct. Cust. Appls. 60, T. D. 33308; *United States* v. *Shallus*, 7 Ct. Cust. Appls. 314, T. D. 36873, and *United States* v. *Tsai*, 9 Ct. Cust. Appls. 42, T. D. 37902.

In more than one of those decisions this court expressly connected the words "produced more than one hundred years prior to the date of importation" with the articles there at issue, which articles were not in any instance claimed to be "objects of art of ornamental character or educational value" but fell under the first part of the paragraph.

It is urged on behalf of appellant here that the theory now advanced by him has never before been advanced, and that actual judicial construction of the parts of the statute now under scrutiny has not heretofore been sought.

Even conceding this to be true and conceding that certain of the expressions in the cases cited might be designated as *obiter*, the question yet remains whether it is not manifest that the Congress by acquiescence, if nothing more, did not in the Tariff Act of 1922 evidence an intent contrary to that for which contention is here made.

The Summary of Tariff Information, prepared by the Tariff Com-: mission for use by the Ways and Means Committee in its preparation of the measure which became the Tariff Act of 1922, certainly made clear the fact that court decisions had applied the one hundred years limitation to articles named in the paragraphs of the prior acts other than "objects of art of ornamental character or educational value." Vide 1920 Summary Tariff Information, 840.

The same fact was also made clear in the summary prepared by the same authority in 1921 for use by the Senate committee. The following is a quotation from page 1484 of the latter document:

Works of art, 100 years old.

(See Survey N–24.)

*Description and uses.*—For works of art produced more than 100 years previous to importation * * *.

\* \* \* \* \* \* \*

*Suggested changes.*—Importations under this provision in the act of 1913 (par. 656) run into the millions in value, those in 1920 amounting to $20,256,000. Every importation must be examined in its entirety and occasionally experts are called in to assist the examiners in determining the question of antiquity. In 1919, apart from the work in the collector's office, 8 to 10 examiners and from 25 to 30 employees in New York devoted a large part of their time to the examination of such importations. A provision reimbursing the Government for the heavy expenses incurred might be given consideration if there shall be no restriction upon importation incorporated in the bill. A definite date instead of 100 years might also be advisable; 1820 would be especially appropriate for furniture and might be applied also to other articles enumerated in the paragraph.

In the light of the foregoing, the Congress having made no material change in the language of the statute, we are unable to conclude otherwise than that the limitation relating to age and consequently the regulation "as to proof of antiquity" was intended by the Congress to run to all the articles covered by the paragraph, and legislative intent, "in tariff matters particularly, is the lodestar of judicial decisions." *United States* v. *Guth Stern & Co., Inc.,* 21 C. C. P. A. (Customs) 246, 248, T. D. 46777.

The judgment of the United States Customs Court is *affirmed.*